FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

2015 JUL 10 AM 10: 34

US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO, FLORIDA

| | |
|---|---|
| RICHARD MONAHAN, an individual, | ) ) ) |
| Plaintiff, | ) ) CASE NO.: |
| v. | ) 6:15-cv-1119-Orl-31KRS ) |
| MEDEX PATIENT TRANSPORT, LLC, CALIBER PATIENT CARE, LLC, K.R. CALVERT CO., LLC, KYLE CALVERT, KLEIN CALVERT, | ) ) ) ) ) |
| Defendants. | ) ) |

## VERIFIED COMPLAINT FOR MONEY DAMAGES, DECLARATORY RELIEF AND DEMAND FOR JURY TRIAL

**COMES NOW**, the Plaintiff, Richard Monahan (hereinafter the "Plaintiff"), through undersigned counsel and pursuant to Fed. R. Civ. P. 8 and M.D. Fla. Local Rules 1.05 and 1.06, and hereby files his *Verified Complaint for Money Damages, Declaratory Relief and Demand for Jury Trial* against Defendants, Medex Patient Transport, LLC ("Medex"), Caliber Patient Care, LLC ("Caliber"), K.R. Calvert Co., LLC ("K.R. Calvert"), Kyle Calvert, and Klein Calvert (collectively, the "Defendants"), and in support thereof states that:

### I. PARTIES

1. Richard Monahan, as the Franchisee, is a resident of Orange County, Florida, and is otherwise *sui juris*.

2. Medex is a Tennessee limited liability company with its office and principal place of business at 501 Metroplex Drive, Suite 201, Nashville, Tennessee 37211.

1

3. Caliber is a Tennessee limited liability company with its office and principal place of business at 501 Metroplex Drive, Suite 201, Nashville, Tennessee 37211.

4. K.R. Calvert is a limited liability company that was incorporated in 2007 in Kansas and maintains its principal place of business in Nashville, Tennessee.

5. Kyle Calvert is a resident of Nashville, Davidson County, Tennessee, and is otherwise *sui juris*.

6. Klein Calvert is a resident of Nashville, Davidson County, Tennessee, and is otherwise *sui juris*.

## II. VENUE AND JURISDICTION

7. This Court has diversity subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332(a)(1) because the amount in controversy is in excess of $75,000.00 exclusive of interest and costs, and is between the Plaintiff and the Defendants who are citizens of different states.

8. This Court has personal jurisdiction over the Defendants because the Plaintiff regularly conducts business in the State of Florida.

9. Venue is proper in this Court because the parties' business activities which are material to this litigation are conducted in substantial part within the Middle District of Florida.

## III. GENERAL FACTS COMMON TO ALL ALLEGATIONS

*Medex Franchise Agreement and Franchise Disclosure Document*

10. Medex was formed in September 2012 as a limited liability company under the trade name Medex Patient Transport to offer Medex franchises which provide non-

emergency medical transportation services to customers needing transportation from one location to another. Medex began offering franchises for sale in 2013.

11. The expectations and obligations of both the Plaintiff and the Defendants are laid out in the Franchise Disclosure Document ("FDD"), issued on February 01, 2014. A true and correct copy of the FDD is attached hereto as Exhibit "A".

12. The FDD contains information regarding the startup costs, fees, obligations, and trademarks associated with opening and operating a Medex Patient Transport franchise.

13. The FDD also lays out what can be expected of the Defendants in regard to opening assistance and outsourced operations provided to the Plaintiff in exchange for an additional fee.

14. The Plaintiff signed his copy of the FDD; however, he did not provide said copy to the Defendants.

15. The Defendants also provided the Plaintiff a copy of the Medex Franchise Agreement (hereinafter the "Franchise Agreement") on or around the same time as the FDD. A true and correct copy of the Franchise Agreement is attached hereto as Exhibit "B".

16. Based on the representations made during negotiations and the information contained in both the FDD and Franchise Agreement, the Plaintiff decided to purchase a Medex franchise.

17. Unlike the FDD, the Plaintiff did sign and return a copy of the Franchise Agreement to the Defendants.

18. On or about May 15, 2014, the Defendants also provided the Plaintiff with an Addendum to the Franchise Agreement (hereinafter the "Addendum"). A true and correct copy of said Addendum is attached hereto as Exhibit "C".

19. In the Addendum, the Plaintiff agreed to purchase and the Defendants agreed to sell, for the sum of $106,720.50, a Medex franchise.

20. Additionally, the Addendum specifically provided that the franchise would include the exclusive territory of Lake, Orange, Osceola, and Seminole Counties in Central Florida.

21. The Plaintiff signed, scanned, and emailed the Addendum to the Franchise Agreement memorializing the aforementioned financial and territorial terms on May 15, 2014.

22. In the Addendum, the terms specified that $53,360.25 was due as the initial franchise fee, and that the remaining $53,360.25 would be financed through the Defendants for a 48-month period, with the first payment of $1,232.48 being due on January 01, 2015.

23. The Plaintiff made this first payment of $53,360.25 on or around May 20, 2014. A true and correct copy of the Plaintiff's Bank of America checking account statement, reflecting a wire transfer to Medex Patient Transport in the amount of $53,360.25 on May 20, 2014, is attached hereto as Exhibit "D".

24. Upon commencing operations as a local franchise, it quickly became clear that the financial calculations represented to the Plaintiffs by the Defendants in the FDD and Franchise Agreement, with specific regard to estimated costs of operation and the Defendants' ability to provide the proper assistance to the Plaintiff, were either incorrect, misrepresented, or both.

25. The Plaintiff was promised by way of the FDD and Franchise Agreement, a centralized service center to provide the following services for the Plaintiff: (i) Call center; (ii) Centralized dispatch; (iii) Route management; (iv) Certain office functions; and (v) Reporting invoices, in exchange for an operations fee. *See* Section 14.3 of the Franchise Agreement.

26. The Defendants failed to do so. Specifically, the Plaintiff had issues with dispatch and the reservation line not working correctly, which caused missed appointments, the software not working the way in which it was explained it would, and the constant need to correct the invoices and billing due to incorrect mileage and pricing being calculated.

27. As part of the Franchisor-Franchisee operation, the Plaintiff completely relied upon the Defendants for these centralized services to properly run the local franchise.

28. The Defendants' dispatch system was consistently subject to high employee turnover, which resulted in a lack of properly trained staff.

29. This lack of training resulted in constant miscommunication from the Defendants to the Plaintiff on the dispatch of the Plaintiff's drivers and their transport locations and assignments.

30. Each time that the Plaintiff brought this issue to the attention of the Defendants, the Plaintiff was met with a defensive response and was told that it was the fault of the Plaintiff.

31. The Defendants eventually changed their dispatch program, which further impeded the Plaintiff's ability to receive the proper client location and information.

32. On or around March 2015, the Plaintiff again approached the Defendants about the dispatch issue. At that time, the Defendants became argumentative, and proceeded to disconnect the Plaintiff's access to the Defendants-mandated dispatch program and the Defendants-mandated email account.

33. The Defendants also removed the "Orlando" franchise from the corporate website's list of franchise locations.

34. Additionally, due to a clerical error on the part of the Defendants, the Defendants terminated the Plaintiff's insurance policies required to operate and maintain their business on or around March 28, 2015.

35. These unilateral actions effectively precluded the Plaintiff from operating their business, as the Plaintiff was unable to view or receive information on patients for transport, unable to email, unable to contact customers, and unable to utilize their company vehicles.

36. Without the ability to conduct their business, the Plaintiff has been left with the ongoing costs of the specifically-outfitted transport vehicles purchased for the franchise operation, combined with other associated costs and damages resulting from the Defendant's omissions and misrepresentations.

37. At all times material, Richard Monahan qualifies under the statutory definition of "franchisee," as defined in Section 817.416(b)(2), *Florida Statutes*.

38. Similarly, at all times material, the subject Franchise Agreement qualifies under the statutory definition of "franchise or distributorship," as defined in Section 817.416(b), *Florida Statutes*.

39. All conditions precedent to the filing of this action have been waived, performed, or excused.

40. The Plaintiff has employed the undersigned counsel in this matter and is obligated to pay Imperium, P.A. for its reasonable attorneys' fees, pursuant to Section 22.4 of the Franchise Agreement[1].

## COUNT I
### *Breach of the Franchise Agreement*

41. The Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 40 set forth above, as if fully set forth herein.

42. A valid contract existed between the Plaintiff and the Defendants.

43. An offer was made by the Defendants to the Plaintiff to purchase a Medex franchise.

44. The Plaintiff accepted this offer and signed the Franchise Agreement.

45. Consideration was paid by the Plaintiff in an amount of $53,360.25 with an installment payment plan for the remaining $53,360.25 to begin on January 01, 2014.

46. The elements of a breach of contract action are: (1) a valid contract; (2) a material breach and; (3) damages. *Beck v. Lazard Freres & Co., LLC*, 175 F.3d 913, 914 (11th Cir. 1999).

*Section 8.2 Opening Assistance*

47. Section 8.2 of the Franchise Agreement states, in pertinent part, that:

> In conjunction with the beginning of operation of the Franchised Business, Franchisor shall make available to Franchisee, at Franchisor's expense, one (1) of Franchisor's representatives, experienced in the System, for the purpose of familiarizing Franchisee's staff with the Medex Patient Transport techniques

---

[1] Section 22.4 of the Franchise Agreement states that "If Franchisor or Franchisee is required to enforce this Agreement in a judicial or arbitration proceeding, the prevailing party shall be entitled to reimbursement of its costs, including reasonable accounting and attorneys' fees, in connection with such proceeding."

and for the purpose of providing general assistance and guidance in connection with the opening of Franchised Business.

48. On or around October 2014, the Defendants sent a representative by the name of Mr. Aaron Fee (hereinafter "Mr. Fee") to assist the Plaintiff under the above provision.

49. Defendants represented to the Plaintiff that Mr. Fee would be able to assist Plaintiff in making new client connections imperative to the commencement and operation of his franchise.

50. Contrary to those representations, Mr. Fee was a new hire with Defendant and was completely unable to properly assist Plaintiff.

51. Defendants therefore breached Section 8.2 of the Franchise Agreement.

52. Plaintiff suffered damages in that additional and unreasonable expenses were spent by the Plaintiff through multiple outreach efforts to establish clientele, when the Defendants originally agreed to provide the resources and established foundation necessary to establish a successful franchise.

53. Plaintiff estimates these damages to be in the amount of $1,000.00.

### *Section 14.1 General Advice and Guidance*

54. Section 14.1 of the Franchise Agreement states, in pertinent part, that:

> Franchisor shall be available to render advice, discuss problems and offer general guidance to Franchisee by telephone, email facsimile, newsletters and other methods with respect to planning, opening and operating the Franchised Business. Franchisor shall not charge for this service, however, Franchisor retains the right to refuse or charge a fee for this service should Franchisee be deemed by Franchisor to be utilizing this service too frequently or in an unintended manner.

55. The Plaintiff, in conjunction with Ms. Donna Fitzgerald in her capacity as Manager of the franchise, made numerous attempts to receive assistance and clarification from the Defendants on issues ranging from dispatch of the drivers to the usage of Defendant's

proprietary computer technology, as well as the invoicing between the Defendants and Plaintiff.

56. With each inquiry by the Plaintiff, the Defendants or their agents did not adequately address the Plaintiff's concerns.

57. The Plaintiff was told by the Defendants during the initial training sessions and through subsequent guidance that the Plaintiff could charge up to and including $55-60 per trip up to ten (10) miles.

58. In truth, once the franchise was operational, the brokers would only pay up to $30 per trip.

59. During the regular course of business, the Plaintiff completed approximately 419 trips.

60. Approximately 146 of these 419 trips were invoiced at the wheelchair rate of $30.00 per trip, for a total of $4,380.00.

61. At the minimum promised rate of $55.00 per trip by the Defendants, the Plaintiff suffered damages in the amount of $25.00 per trip at the wheelchair rate, for a total of $3,650.00.

62. Approximately 273 of these 419 trips were invoiced at the ambulatory rate of $20.00 per trip, for a total of $8,190.00.

63. At the minimum promised rate of $55.00 per trip by the Defendants, the Plaintiff suffered damages in the amount of $35.00 per trip, for a total of $9,555.00.

64. As a result of the Defendant's incorrect or lack of proper guidance, the Plaintiff suffered total damages in the amount of $13,205.00.

*Sections 15.5: Failure to Maintain Coverage*

65. Section 15.5 of the Franchise Agreement states, in pertinent part, that:

> Should Franchisee not procure and maintain insurance coverage as required by this Agreement, Franchisor has the right (but not the obligation) to immediately procure such insurance coverage and to charge the premiums to Franchisee, which charges, together with a reasonable fee for expenses incurred by Franchisor in connection with such procurement, shall be payable by Franchisee immediately upon notice.

66. At all times material, the Plaintiff maintained all required levels of insurance and made propter, on-time payments in compliance with Section 15.4 of the Franchise Agreement[2].

67. As a result of a clerical error on the part of the Defendants, payments to maintain the insurance policies were missed, and the Defendants served the Plaintiff with notices of cancellation on the required policies in an email on or around March 28, 2015.

68. Without the proper proof of valid insurance, the Plaintiff was unable to operate the franchise.

69. The Plaintiff made it clear to the Defendants that payment had, in fact, been provided, and that they were not discontinuing any operations.

70. While not obligated to do so, the Defendants should have undertaken efforts, pursuant to its rights under Section 15.5 of the Franchise Agreement, to immediately procure insurance coverage for any lapse in time, for which it could have charged the Plaintiff.

71. However, the Plaintiff chose not to do so.

*Exclusivity of Territorial Operations*

72. Paragraph 3 of the Addendum agreed to by the parties specifically states that "the exclusive territory for Richard Monahan will include the counties of Lake, Orange, Osceola and Seminole in Florida ..." *Id.*

---

[2] Section 15.4 of the Franchise Agreement details the Franchisee's requirement to provide the Franchisor "certificates of insurance showing compliance with [this section]."

73. Similarly, Item 12 of the FDD provides that the Plaintiff will "receive an exclusive territory with a minimum of a pre-determined population base .... [and that y]our protected territory is not dependent upon any level of sales volume or performance." *Id.*

74. Having established a valid contract on the Franchise Agreement, the Plaintiff continues to maintain the exclusive rights to operate the franchise in the above counties, despite the Plaintiff's performance or any lack thereof.

75. Upon information and belief, the Defendants are in ongoing negotiations with a third party franchisee based in the Jacksonville, Florida area about purchasing the rights to maintain a franchise over the same territory that the Plaintiff currently controls.

76. This third party franchisee has approached the Plaintiff regarding the potential purchase of the Plaintiff's specially-modified vehicles for this potential operation.

77. Any such attempt by the Defendants to sell the rights to the counties currently under the control of the Plaintiff without the Plaintiff's relinquishment of said rights is a violation of the exclusivity agreement between the parties.

78. The Plaintiff has suffered damages in the amount of $53,360.25 in that the Defendants have not justly compensated the Plaintiff for the territorial rights to which the Defendants are currently negotiating with the third party franchisee.

**WHEREFORE,** the Plaintiff, Richard Monahan, respectfully requests that this Court:

A. Grant the Plaintiff declaratory relief against the Defendants, Medex Patient Transport, LLC et. al, declaring the Defendants to be in breach of the Franchise Agreement;

B. Cancelling the remaining $53,360.25 amount to be financed and paid by the Plaintiff;

C. Award money damages in the amount of $66,565.25, plus interest, costs including an award of reasonable attorneys' fees pursuant to the Franchise Agreement, and;

D. Any such other and further relief as this Court deems appropriate.

## COUNT II:
### *Violation of the Florida Franchise Misrepresentation Act*

79. The Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 40 set forth above, as if fully set forth herein.

80. Section 817.416(1), *Fla. Stat.*, makes it "unlawful, when selling or establishing a franchise or distributorship, for any person:

> (1) Intentionally to misrepresent the prospects or chances for success of a proposed or existing franchise or distributorship

81. The Defendants intentionally misrepresented to the Plaintiff that the Plaintiff would not be in any competition with anyone or any other entity using the name "Medex" (hereinafter the "Medex Mark") within the exclusive territory purchased under the Franchise Agreement.

82. Item 13 of the FDD states that the Plaintiff does "not receive any rights to the Marks other than *the exclusive right to use them in the operation of your franchised business*." *Id* (emphasis added).

83. Furthermore, Item 13 states that the Defendants know of "no effective material determinations of the USPTO, trademark trial and appeal board, the trademark

administrator or any court; ***pending infringement***, opposition or cancellation; or pending material litigation involving the Marks." *Id.* (emphasis added).

84. However, the Plaintiff was regularly forced to compete against other entities within the exclusive territory using the Medex name.

85. The Plaintiff was promised by way of the FDD and the Franchise Agreement, trademark that was federally protected and nationally recognized. *See* FDD at Item 13; Section 6.1 of the Franchise Agreement.

86. The Defendants intentionally misrepresented the nature of the protected mark.

87. Specifically, the trademark identified in the FDD was not registered to protect the types of services Medex and its franchisees engage in, but rather, to protect the sale of motor cars used for patient transport services.

88. This improper registration, despite representations to the contrary, forced the Defendants, and indeed the Plaintiff, to rebrand the company and to incur additional costs as part of the rebranding.

89. As a company which regularly conducts business in the State of Florida, the Defendants knew of the presence of other entities using the "Medex" name and thus intentionally misrepresented to the Plaintiff that their franchise operation would succeed based upon their exclusive rights to the subject territory.

90. Section 817.416(3), *Fla. Stat.* states that:

> Any person, who shows in a civil court of law a violation of this section, may receive a judgment for all moneys invested in such franchise or distributorship. Upon such a showing the court may award any person bringing the action, and execution shall thereupon issue.

91. Plaintiff was also required to convert the branding of the franchise from "Medex" to "Caliber," which conversion, including van decals and Sprint phone service, cost Plaintiff $550.00.

92. Furthermore, having spent two months marketing as "Medex," Plaintiff was forced to spend twenty hours per week for two months revisiting each customer to reintroduce the franchise as "Caliber."

93. This cost approximately 160 hours of labor, plus fuel and tolls, for an estimated $6,360.00. This includes $5,760.00 for paid hours and $600.00 for fuel and tolls in that time.

94. Plaintiff was also required to purchase and retrofit two (2) vans for use as the patient transport vehicles.

95. The total cost of purchase and handicap conversion is in the amount of $61,044.30.

**WHEREFORE**, the Plaintiff, Richard Monahan, respectfully requests that this Court find that the Defendants, Medex Patient Transport, LLC et. Al, are in violation of the Florida Franchise Misrepresentation Act and award money damages in the amount of $53,360.25 for the initial franchise fee, $6,910.00 for the cost of conversion of branding, $61,044.30 for the cost of the vehicle purchase and conversions, plus interest, costs including an award of reasonable attorneys' fees pursuant to Sec. 817.416(3), *Fla. Stat.* and the Franchise Agreement, as well as such other and further relief as this Court deems appropriate.

## COUNT III
### *Negligent Misrepresentation*

96. The Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 40 set forth above, as if fully set forth herein.

97. The Defendants misrepresented: (1) the exclusivity of the "Medex" Mark; (2) the Defendant's ability to assist the Plaintiff in beginning and maintaining the franchise; (3) the stability and reliability of the proprietary computer and billing systems required by the Defendants to maintain franchise operations and; (4) the exclusive use of the established territory.

98. Even if the Defendants were unaware of other similar usages of the "Medex" Mark within the exclusive territory and believed its representation to be true, it was, in fact, false.

99. The Defendants were negligent in making the representations because the Defendants should have known the representations were false as an entity which regularly conducts business within this judicial district and the entire State of Florida.

100. The Defendants intended to induce the Plaintiff to rely on these misrepresentations in order to convince the Plaintiff to purchase the franchise.

101. The Plaintiff did, in fact, rely on these misrepresentations when making the decision to enter into the agreement to purchase the franchise.

102. Justifiably relying upon these misrepresentations, the Plaintiff suffered monetary injuries in the form of the initial franchise fee ($53,360.25), as well as the related costs of purchasing and converting the required vehicles ($61,044.30).

103. The Plaintiff would not have entered into the agreement had he known: (1) that the "Medex" mark was not properly registered and thus not exclusive; (2) that he would not have exclusive rights to the subject territory and; (3) that the Defendants would not be able or willing to provide the proper assistance and operational support necessary to maintain the franchise.

**WHEREFORE**, the Plaintiff, Richard Monahan, respectfully requests that this Court find that the Defendants, Medex Patient Transport, LLC et. al, negligently misrepresented statements vital to the success of the franchise operation, and award money damages in the amount of $53,360.25 for the initial franchise fee, $6,910.00 for the cost of conversion of branding, $61,044.30 for the cost of the vehicle purchase and conversions, plus interest, costs including an award of reasonable attorneys' fees pursuant to the Franchise Agreement, as well as such other and further relief as this Court deems appropriate.

### COUNT IV
*Unjust Enrichment*

104. Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 40 set forth above, as if fully set forth herein.

105. Plaintiff conferred a benefit on the Defendants in the amount of the initial franchise fee of $53,360.25.

106. Defendants had knowledge of the initial franchise fee.

107. Defendants voluntarily accepted and retained said initial franchise fee.

108. As the Defendants unilaterally took actions which effectively prohibited the Plaintiff from operating the franchise, the circumstances are such that it would be inequitable for the Defendants to retain the franchise fee.

**WHEREFORE**, the Plaintiff, Richard Monahan, respectfully requests that this Court award money damages against the Defendants, Medex Patient Transport, LLC et. al in the amount of $53,360.25, plus interest, costs including an award of reasonable attorneys' fees pursuant to the Franchise Agreement, as well as such other and further relief as this Court deems appropriate.

## JURY DEMAND

Plaintiff requests a trial by jury on all claims so triable.

Respectfully Submitted,

*/s/ Augustus Sol Invictus*

**Augustus Sol Invictus, Esquire**
Florida Bar No.: 98586
IMPERIUM, P.A.
390 North Orange Ave., Ste. 2300
Orlando, Florida 32801
Phone: 407.255.2045
ainvictus@imperiumlex.com

## VERIFICATION

Under penalty of perjury under the laws of the United States of America and the State of Florida, I declare that I have read the foregoing, and that the facts alleged therein are true and correct to the best of my knowledge and belief. I understand that a false statement in this Verification will subject me to penalties of perjury.

*/s/ R.C. Monahan*
Richard Monahan,
Medex Franchisee

Dated this 2nd day of July 2015.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that I have furnished a copy of the foregoing to Peter Dosik, Esq., Shipe Dosik Law, LLC, 1145 Zonolite Road, Atlanta, GA, 30306, counsel for the Defendants, via email at pete@shipedosiklaw.com on this 9th day of July 2015.

_____
**Augustus Sol Invictus, Esquire**